Case No. 2023-1457

United States Court of Appeals for the Federal Circuit

---

Skull Shaver, LLC

Plaintiff – Appellant

v.

Ideavillage Products Corp.

Defendant – Appellee

---

Appeal from the United States District Court

for the District of New Jersey

District Court Civil Action No. 2:18-cv-03836

The Honorable Evelyn Padin

United States District Judge

---

The Brief of the Appellant

- Corrected -

---

Ahmed M. Soliman
Soliman & Associates
923 Haddonfield Rd., Ste. 300
Cherry Hill, NJ 08002
(856) 324-8313
soliman@solimanlegal.com

The one Claim of Skull Shaver's '060 Design Patent recites:

The ornamental design for a contoured electric head shaver, as shown and described.

Fig. 1 is a front top perspective view of a contoured electric head shaver showing the new design;

Fig. 2 is a front bottom perspective view thereof;

Fig. 3 is a top plan view thereof;

Fig. 4 is a bottom plan view thereof;

Fig. 5 is a left side view thereof, the right side being the mirror image thereof;

Fig. 6 is a rear end elevational view thereof, and;

Fig. 7 is a front and elevation view thereof.

The broken lines shown in the drawing illustrate portions of article and form no part of the claimed design.



FIG. 1    FIG. 2    FIG. 3    FIG. 4    FIG. 5    FIG. 6    FIG. 7

Appx026.

# Certificate of Interest

Counsel for the Appellant, Skull Shaver, LLC, certifies as follows:

1. The full name of every party represented by me is: Skull Shaver, LLC.

2. The name of the real party in interest represented by me is: None.

3. All parent corporations and publicly held companies that own 10 percent or more of stock in the party represented by me are:

    None.

4. The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court (and who have not or will not enter an appearance in this case) are:

    Dimarino Lehrer & Collazo, Norman Lehrer, Emmett Callazo, Kristine Butler, and Anthony J. DiMarino.

5. The pending trial court proceedings will be directly affected by this Court's decision. (Skull Shaver, LLC v. Ideavillage Products Corp., Civil Action No. 2:18-cv-03836, District of New Jersey).

Dated: April 4, 2023

/s/ Ahmed Soliman
Ahmed Soliman
Attorney for the Appellant

# Table of Contents

STATEMENT OF RELATED CASES ........................................................ 1

JURISDICTIONAL STATEMENT ............................................................ 1

STATEMENT OF ISSUES ..................................................................... 2

STATEMENT OF THE CASE ................................................................. 2

THE ASSERTED PATENTS .................................................................... 4

THE ACCUSED PRODUCT .................................................................... 4

SUMMARY OF THE ARGUMENT ........................................................ 4

ARGUMENT ........................................................................................ 5

STANDARD OF REVIEW ...................................................................... 5

*1.This Court should determine that the district court abused its discretion when it granted summary judgment despite the contradictory expert opinions establishing genuine issues of material fact.* .................................................................................. 6

*2..This Court should determine that the district court erred when it concluded Ideavillage's product did not infringe on Skull Shaver's patent because an ordinary observer would be deceived into believing that Ideavillage's accused product was the same as Skull Shaver's asserted patented product.* .................................. 9

CONCLUSION .....................................................................................18

ADDENDUM

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

## Table of Authorities

### CASES

*Accent Packaging, Inc.v. Leggett & Platt*, Inc., 707 F.3d 1318, 1325 (Fed. Cir. 2013) ------------------------------------------------------------------------- 5

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970) ---------------------------- 6

*Amini Innovation Corp. v. Anthony California, Inc.*, 439 F.3d 1365 (Fed. Cir. 2006) --------------------------------------------------------------------------- 17

*B-K Lighting, Inc. v. Fresno Valves & Castings, Inc.*, 375 F. App'x 28, 32 (Fed. Cir. 2010) ------------------------------------------------------------------ 8

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) ----------------------------------------------------------------------- 6

*Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1303-04 (Fed. Cir. 2010) --------------------------------------------------------------------------- 11

*Crown Packaging Tech., Inc. v. Ball Metal Beverage Container Corp.*, 635 F.3d 1373, 1384 (Fed. Cir. 2011) ---------------------------------------------- 8

*Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 678 (Fed. Cir. 2008) -6, 10

*Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1335 (Fed. Cir. 2015) ------------------------------------------------------------------------- 10

*Gorham Mfg. Co. v. White*, 81 U.S. 511, 528 (1871)----------------------------6, 10

*Hana Financial, Inc. v. Hana Bank*, 574 U.S. 418, 422 (2015)-------------------- 7

*Laryngeal Mask Co. Ltd. v. Ambu A/S*, 618 F.3d 1367, 1370 (Fed. Cir. 2010) --5

*Litton Sys., Inc. v. Whirlpool Corp.*, 728 F.2d 1423, 1444 (Fed. Cir. 1984) ----- 11

*Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1295 (Fed. Cir. 2010) 10

### STATUTES

28 U.S.C. § 1295(a)(1) ---------------------------------------------------------- 1

28 U.S.C. § 1331------------------------------------------------------------------ 1

35 U.S.C. § 271(a) --------------------------------------------------------------6, 10

## Statement of Related Cases

Skull Shaver is unaware of any other appeal in or from the same civil action or proceeding in the lower court or body that was previously before this court or any other appellate court. The Court's decision will directly affect the trial court order for summary judgment in the United States District Court for the District of New Jersey. (Skull Shaver, LLC v. Ideavillage Products Corp., Civil Action No. 2:18-cv-03836, District of New Jersey).

## Jurisdictional Statement

On March 20, 2018, Skull Shaver, LLC ("Skull Shaver") filed a complaint against Ideavillage Products Corp. ("Ideavillage") for patent infringement in the United States District Court for the District of New Jersey. The district court had jurisdiction under 28 U.S.C. § 1331, which grants the United States district courts original jurisdiction to hear civil actions arising under laws of the United States.

On December 28, 2022, the United States District Court for the District of New Jersey granted Ideavillage's motion for summary judgment of noninfringement. Subsequently, on January 25, 2023, Skull Shaver filed a timely notice of appeal. Therefore, this Court has jurisdiction under 28 U.S.C. § 1295(a)(1), which provides in relevant

part that the United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction of an appeal from a final decision of a district court of the United States arising under any Act of Congress relating to patents.

## Statement of Issues

An ordinary observer would be deceived into believing that Ideavillage's accused product was the same as Skull Shaver's asserted patented product, therefore, the district court erred when it determined Ideavillage's product did not infringe on Skull Shaver's patent under the ordinary observer standard. The district court abused its discretion when it granted Ideavillage's motion for summary judgment because the contradictory expert opinion of each party established a genuine issue of material fact as to whether Skull Shaver's Patent was infringed, and only a jury can resolve such disputes at trial.

## Statement of the Case

This suit for design patent infringement was initiated by the filing of Skull Shaver's complaint on March 20, 2018, alleging that Ideavillage violated Skull Shaver's '060 design patent. In lieu of answering the complaint, Ideavillage filed a motion to dismiss for failure to state a claim. In Ideavillage's motion, it presented photographs of its shaver and copies of the drawings from the '060

patent and set forth arguments as to how the products differed and why there was no infringement. Skull Shaver opposed the motion to dismiss setting forth the numerous similarities between the Ideavillage's product and the '060 patent. Skull Shaver reiterated the position set forth in the complaint that there were substantial similarities and that the Ideavillage shaver infringed the '060 patent.

On December 21, 2018, this District Court denied Ideavillage's motion to dismiss. The District Court pointed to the similarities between the products and ruled that an evidentiary hearing would be necessary in order to determine whether there was infringement. Discovery ensued, and Skull Shaver obtained two expert opinions concluding that Ideavillage's product infringes that patent of Skull Shaver. Appx56, Appx71, Appx247. Ideavillage obtained a contradictory expert opinion. Appx105.

Following discovery, Ideavillage moved for summary judgment. Ideavillage alleged that, under the ordinary observer test, there is no infringement. It pointed to what it believes to be numerous differences between its shaver and the '060 patent. Ideavillage made essentially the same arguments as it did in its motion to dismiss which was denied. However, the motion for summary judgment was granted by the District Court on December 28, 2022. Appx03. This appeal follows.

**The Asserted Patents**

On November 5, 2013, the United States Patent and Trademark Office (USPTO) granted Design Patent No. D693,060 (the '060 patent) to Skull Shaver. The '060 patent covers the ornamental design of a contoured electric head shaver. Appx26.

**The Accused Product**

Ideavillage's product is also an electric shaver. Appx38. Like Skull Shaver's '060 patent, the Ideavillage product also a contoured design for an electric head shaver. Appx38.

This appeal centers on whether the district court erred when it determined that Ideavillage's product did not infringe on Skull Shaver's '060 Patent, and whether the district court abused its discretion when it granted Ideavillage's motion for summary judgment.

## Summary of the Argument

This Court should determine that the district court abused its discretion when it granted Ideavillage's motion for summary judgment, because the district court incorrectly held that contradictory expert opinions does not create a genuine issue of material fact for a jury to resolve. That ruling directly contradicts the precedent set by this Honorable court.

This Court should also determine that the district court erred

when it concluded that Ideavillage's accused product did not infringe on Skull Shaver's asserted patents. If the district court had conducted the ordinary observer test properly, it would have noticed that the accused product and Skull Shaver's '060 patent are substantially the same, and such a resemblance would deceive an observer into believing the two are the same.

## Argument

### Standard of review

This is an appeal from the district court's December 28, 2023 order and opinion granting Ideavillage's motion for summary judgment. Appx03. The Federal Circuit reviews the district court's grant of summary judgment of patent non-infringement *de novo*. *Accent Packaging, Inc. v. Leggett & Platt*, Inc., 707 F.3d 1318, 1325 (Fed. Cir. 2013) (citing *Laryngeal Mask Co. Ltd. v. Ambu A/S*, 618 F.3d 1367, 1370 (Fed. Cir. 2010).

Under the well-established summary judgment standard, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party is "entitled to judgment as a matter of law" only when the nonmoving party has failed to make a sufficient showing on an essential element of [his or] her case with respect to which [he or] she has the burden of

proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

**1. This Court should determine that the district court abused its discretion when it granted summary judgment despite the contradictory expert opinions establishing genuine issues of material fact.**

Infringement of a patent occurs when a party, without authority, "makes, uses, offers to sell, or sells any patented invention, within the United States." 35 U.S.C. § 271(a). To determine whether a design patent has been infringed, the Federal Circuit applies the "ordinary observer" test. *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 678 (Fed. Cir. 2008). A court should conclude that a product infringed "if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other." *Id.* at 670 (quoting *Gorham Mfg. Co. v. White*, 81 U.S. 511, 528 (1871)).

The burden of showing the absence of a genuine issue as to any material fact, and for these purposes the material it lodged, must be viewed in the light most favorable to" Skull Shaver. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The Supreme Court has "long recognized across a variety of doctrinal contexts that, when the relevant question is how an ordinary person or community would make an assessment, the jury is generally the decisionmaker that ought to

provide the fact-intensive answer." *Hana Financial, Inc. v. Hana Bank,* 574 U.S. 418, 422 (2015) (ruling that "tacking" as used to determine whether a later trademark can claim priority to an earlier used trademark is a fact question for the jury since it requires a determination as to whether the "ordinary consumer" would find that the two marks create the same commercial impression). As noted above, design patent infringement requires determining how the ordinary observer would view the overall effect of the claimed design with the overall effect of the accused product and thus the Supreme Court's admonishment in *Hana* applies to design patent infringement.

In the case at hand, and at the core of its ruling, the district court rejected Skull Shaver's argument that the summary judgment standard has not been met by Ideavillage, since the contradictory expert opinions of the parties creates a genuine issue of material fact as to whether Skull Shaver's '060 patent has been infringed or not. Appx21. In so doing, the district court cited a string of district court opinions, and one opinion from this Honorable Court, all of which predate 2010, and all for the proposition that contradictory expert opinions does *not* create a genuine issue of material fact in patent infringement cases. *Id.*

However, the court erred by failing to instead rely on the more recent precedent of this Honorable Court set in 2010 that specifically

holds that contradictory expert opinions *does* create a genuine issue of material fact in patent infringement cases. *See B-K Lighting, Inc. v. Fresno Valves & Castings, Inc.*, 375 F. App'x 28, 32 (Fed. Cir. 2010). In *B-K Lighting,* Plaintiff Patentee appealed the district court's order for summary judgment against it, and this Honorable Court reversed summary judgment on the grounds that the contradictory expert opinions created a genuine issue of material fact and remanded the case for further proceedings.

Indeed, the courts have since repeatedly held that contradictory expert opinions create a genuine issue of material fact on the issue of infringement. *See Crown Packaging Tech., Inc. v. Ball Metal Beverage Container Corp.*, 635 F.3d 1373, 1384 (Fed. Cir. 2011) ("Where there is a material dispute as to the credibility and weight that should be afforded to conflicting expert reports, summary judgment is usually inappropriate.").

Likewise, the expert witnesses for each party in the case at hand advanced conflicting opinions as to whether Ideavillage's product infringed Skull Shaver's '060 patent. For example, whereas Ideavillage's expert concluded that the ordinary observer would not be confused the two products as being the same, Skull Shaver obtained two expert reports, by Daniel Teteak and Paul Hatch, concluding that

the ordinary observer would be confused. Appx56 and Appx 71.

Additional, Mr. Hatch later issued another report rebutting the expert report of Ideavillage. Appx247. Specifically, Mr. Hatch pointed out that the opinion of Ideavillage's expert, Alan Ball, is flawed because it relies upon minor differences, and places an exaggerated amount of emphasis on minor isolated parts. *Id.*

In light of the contradictory conclusions of the experts for each party, including the well-reasoned opinion of Skull Shaver's two experts, a genuine issue of material fact exists as to whether or not an ordinary observer would confuse the two products, and as such, the standard for summary judgment has not been met. This Honorable Court should therefore reverse the district court's summary judgment order for that reason alone and remand this case for trial.

**2. This Court should determine that the district court erred when it concluded Ideavillage's product did not infringe on Skull Shaver's patent because an ordinary observer would be deceived into believing that Ideavillage's accused product was the same as Skull Shaver's asserted patented product.**

The district court's error in ruling that the contradictory expert opinions in this matter does not create a genuine issue of material fact is reason enough to vacate the summary judgment ruling and remand for trial. However, if even, *arguendo*, the contradictory expert opinions do not necessarily negate summary judgment, the district nonetheless

erred by concluding that Ideavillage's product does not infringe Skull Shaver's patented product.

Infringement of a patent occurs when a party, without authority, "makes, uses, offers to sell, or sells any patented invention, within the United States." 35 U.S.C. § 271(a). To determine whether a design patent has been infringed, the Federal Circuit applies the "ordinary observer" test. *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 678 (Fed. Cir. 2008). A court should conclude that a product infringed "if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other." *Id.* at 670 (quoting *Gorham Mfg. Co. v. White*, 81 U.S. 511, 528 (1871)).

The ordinary observer test is a two-tiered test. First, the court shall determine whether the asserted design and the accused design are "substantially the same" to the ordinary observer. *Egyptian Goddess, Inc*, 543 F.3d at 678 (quoting *Gorham Mfg. Co.*, 81 U.S. at 528). The ordinary observer test requires the fact finder to compare "similarities in overall designs, not similarities of ornamental features in isolation." *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1335 (Fed. Cir. 2015) (citing *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1295 (Fed. Cir. 2010); *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d

1294, 1303-04 (Fed. Cir. 2010)). Moreover, "minor differences between a patented design and an accused article's design cannot, and shall not, prevent a finding of infringement. *Crocs*, 598 F.3d at 1303 (quoting *Litton Sys., Inc. v. Whirlpool Corp.*, 728 F.2d 1423, 1444 (Fed. Cir. 1984)).

In *Crocs, Inc. v. International Trade Commission*, the Federal Circuit explained that the United States International Trade Commission's ("ITC") patent infringement analysis was flawed in its approach. 598 F.3d at 1303-1304. The ITC focused its analysis on the minor differences between the patented design and the accused product, therefore determining that the accused product did not infringe on the asserted patent. *Id.* The Federal Circuit explained that the ITC's approach was too narrow and distracted it from analyzing the "overall impression of the claimed ornamental features." *Id.* In its analysis, the Federal Circuit explained that if viewed side-by-side, the asserted patent and the alleged product appeared nearly identical. *Id.* at 1304-1307.

Most importantly – in the context of applying the summary judgment standard - the nature of the ordinary observer test is a fact-based question for the jury. The Supreme Court has "long recognized across a variety of doctrinal contexts that, when the relevant question

is how an ordinary person or community would make an assessment, the jury is generally the decisionmaker that ought to provide the fact-intensive answer." *Hana Financial, Inc. v. Hana Bank,* 574 U.S. 418, 422 (2015) (ruling that "tacking" as used to determine whether a later trademark can claim priority to an earlier used trademark is a fact question for the jury since it requires a determination as to whether the "ordinary consumer" would find that the two marks create the same commercial impression).

In the case at hand, the district court erred because it ruled summarily that an ordinary observer test had been satisfied, without allowing a jury to make that determination. In so doing, the district court's analysis was focused too narrowly. The district court stated that Ideavillage's product "does not infringe upon Skull Shaver's Head Shaver patented design because a side-by-side comparison of the accused product and the patented design demonstrates that the two are 'substantially distinct' and 'plainly dissimilar" under the ordinary observer test." Appx013.

The court failed to compare the overall design of the '060 patent and the accused product. The district court focused on single minor differences. Specifically, the court opined that: (1) Skull Shaver's handle has "egg-shaped" design whereas Ideavillage's product has a "computer mouse" shaped design; (2) Skull shaver has an elongated

neck between the handle and base whereas Ideavillage's product does not have an elongated neck; (3) Skull Shaver's shaver has a collar below the neck whereas Ideavillage's product does not; and (4) Skull Shaver's design has a flat base whereas the Ideavillage product does not. Appx018.

If the trial court had conducted the ordinary observer test properly, it would have noticed that the accused product and the '060 patent are substantially the same, and such a resemblance would deceive an observer into believing the two are the same. Following the Federal Circuit's clear admonition that the fact finder is to analyze the design as a whole, it is readily apparent that a fact finder could determine that the drawings in the '060 Patent and the Accused Device are "substantially the same."

**Table 8: Comparison of the claimed design of Skull Shaver's '060 Patent and the Accused Design**





FIG. 3

FIG. 4

FIG. 5

FIG. 6

FIG. 7

As shown above, Table 8 of the December 30, 2020 Report of Paul Hatch contains two "top end" views, two "bottom end" views and three "side" views of the drawings and the accused device. Appx085.

From above, and from below, the drawings and the accused

device appear substantially similar, if not the same. From above, the drawings and the accused device both have an egg-shaped body.



FIG. 3

From below, the visual impression is also substantially the same. The foundation, which consists of the four-pronged feet containing the razors, is overlapped by the egg-shaped body of the shaver by a relatively small amount at the front and at the back of the device, just as it is in the drawings.



FIG. 4

The side views of the drawings and the accused device also both demonstrate an egg-shaped body located almost centrally above an essentially rectangular base with rounded edges.



The concave indents located on the side of the egg-shaped body which are present on the drawings are replicated in the same location in the accused device.

Further, the accused device is not monochromatic. The foundation of the accused device, which houses the shaving blades,

consists of different materials. As shown above, the lower portion of the foundation is made of the same material and is the same color of the accused device. But the upper half of the foundation of the accused device is different: it has a metallic finish and is a darker, contrasting color from the lower half of the foundation and the body of the accused device. This contrast creates the visual impression of distance between the foundation and the body of the accused device, much like the distance demonstrated in drawings of the '060 patent.

When the drawings and the accused device are properly viewed in their totality, a fact finder could find that the accused product embodies the design of the '060 patent or is a colorable imitation of it. Stated differently, the ordinary observer could easily determine that the drawings of the '060 patent and accused device are substantially the same.

The district court's non-infringement ruling is an error because it fails to properly apply the required holistic approach to the infringement analysis, focusing instead on isolating the features of the drawings and the accused device and demanding match between them much more than it needs to be in applying the ordinary observer test. Indeed, in *Amini Innovation Corp. v. Anthony California, Inc.*, 439 F.3d 1365 (Fed. Cir. 2006), the Federal Circuit vacated a summary judgment of no design patent infringement of a claim directed to a bed

frame because the district court "mistakenly analyzed each element separately instead of analyzing the design as a whole from the perspective of an ordinary observer." *Id*. at 1372. The Federal Circuit criticized the district court for "focus[ing] too narrowly on the isolated ornamental features." *Id*. at 1371. The court found it "noteworthy" that "the deception that arises is a result of similarities in the overall design, not of similarities in ornamental features considered in isolation." *Id*. As discussed above, the Federal Circuit found the same faulty analysis in *Crocs*.

In light of the forgoing errors by the district court, and overall similarities between Skull Shaver's '060 patent and Ideavillage's infringing product, summary judgment should be reversed, and this case should be remanded.

## Conclusion

For these reasons and based on the law and evidence before the district court, the district court erred when it granted Ideavillage's motion for summary judgment. Skull Shaver requests that the Court reverse the district court's grant of Ideavillage's motion for summary judgment and remand for further proceedings.

<u>/s/ Ahmed Soliman</u>
Ahmed Soliman
Attorney for the Appellant

Case No. 2023-1457

United States Court of Appeals for the Federal Circuit

---

Skull Shaver, LLC

Plaintiff – Appellant

v.

Ideavillage Products Corp.

Defendant – Appellee

---

ADDENDUM

---

United States District Court for the District of New Jersey

Order for Summary Judgment ........................................... Appx003

Opinion of Judge Padin ................................................... Appx004-025

United States Design Patent US D693,060 ................... Appx026-028

NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| SKULL SHAVER, LLC,<br><br>                              Plaintiff,<br><br>                    v.<br><br>IDEAVILLAGE PRODUCTS CORP.,<br><br>                              Defendant. | Case No. 18-cv-3836 (EP) (AME)<br><br>**ORDER** |

**THIS MATTER** comes before the Court by way of Defendant Ideavillage Products

Corporation's motion for summary judgment, D.E. 74, as to Plaintiff Skull Shaver, LLC's

complaint, D.E. 1.  The Court has reviewed the parties' briefs and for the reasons set forth in the

Opinion filed herewith,

**IT IS** on this 28th day of December, 2022;

**ORDERED** that Defendant's motion for summary judgment, D.E. 74, is **GRANTED**; and it is

finally

**ORDERED** that Plaintiff's complaint, D.E. 1, is **DISMISSED** with prejudice.

Dated: December 28, 2022

_____
Hon. Evelyn Padin, U.S.D.J.

NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| SKULL SHAVER, LLC, | Case No. 18-cv-3836 (EP) (AME) |
| Plaintiff, | **OPINION** |
| v. |  |
| IDEAVILLAGE PRODUCTS CORP., |  |
| Defendant. |  |

**PADIN, District Judge.**

Before the Court is Defendant Ideavillage Products Corporation's ("IDV") motion for summary judgment, in which it asserts non-infringement of Plaintiff Skull Shaver, LLC's ("Skull Shaver") U.S. Design Patent No. D693,060 ("'060 Patent" or "Head Shaver") pursuant to Fed. R. Civ. P. 56. The Court decides this matter on the papers pursuant to Fed. R. Civ. P. 78 and L.Civ.R.78.1(b). For the reasons explained below, IDV's pending summary judgment motion will be **GRANTED**.

## I.    BACKGROUND

Skull Shaver is a New Jersey limited liability company. D.E. 1 "Compl." ¶ 1. IDV is a New Jersey corporation. *Id.* ¶ 2. This Court has federal question jurisdiction over this matter under 28 U.S.C. § 1338(a) because the cause of action arises under the United States Patent Laws, particularly, 35 U.S.C. §§ 271 and 289. *Id.* ¶ 3.

Skull Shaver designs and sells electric shavers, including the patented Head Shaver product at issue here.  *Id.* ¶¶ 5-6;[1] *see also* D.E. 74-4.  The design patent for the Head Shaver product was issued on November 5, 2013.  Compl. ¶ 6.  The '060 Patent claims "[t]he ornamental design for a contoured electric head shaver, as shown and described."  D.E. 74-4.

The parties agree that the Head Shaver has four major elements: (1) an egg-shaped handle with concave grooves on the underside and sides of the handle; (2) an extended neck; (3) a collar; and (4) a flat shave head.  D.E. 74-2 "Def. 56.1 Stmt." ¶ 8; D.E. 79-1 "Pl. Resp. 56.1 Stmt." ¶ 8.  According to Skull Shaver, IDV's own shaver infringes on Skull Shaver's design patent for the Head Shaver.  Compl. ¶ 6.

IDV's accused product is its Flawless Legs shaver, which IDV launched in 2018.  Def. 56.1 Stmt. ¶ 12.  On July 9, 2019, a design patent for the Flawless Legs product was issued to IDV under U.S. Design Patent No. D853,645 ("'645 Patent").  Def. 56.1 Stmt. ¶ 25; *see also* D.E. 74-6.  The '645 Patent claims "[t]he ornamental design for a shaving device, as shown and described."  D.E. 74-6.

While the parties agree that there are dissimilarities between the patented design and the accused product, they disagree as to whether the dissimilarities make the two overall "plainly dissimilar" from one another or whether these dissimilarities are merely examples of "minor differences."  *See* D.E. 74-1 "Mot." at 10-18; *see also* D.E. 79 "Opp'n" at 20-26.

Skull Shaver filed this action on March 20, 2018.  *See* Compl.  Skull Shaver alleges that IDV's Flawless Legs product infringes on the '060 Patent.  On December 21, 2018, Judge Arleo denied IDV's motion to dismiss after finding that, based on the plausibility of the pleadings and

---

[1] The Court uses the assigned paragraph numbers in the Complaint, despite the numbering error on the second page.

the benefit that would be obtained from a complete evidentiary record, the Court could not determine whether Skull Shaver's patented design had been infringed. *See* D.E. 15.

Now, with the benefit of a more complete evidentiary record, IDV moves for summary judgment on Skull Shaver's design patent infringement claim. *See* Mot. IDV asserts that the Flawless Legs product does not infringe on the Head Shaver design because the two are not substantially the same. *Id.* Being fully-briefed, the Court now decides IDV's pending summary judgment motion.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 136, 145-46 (3d Cir. 2004). A fact is material if it "might affect the outcome of the suit under the governing law" and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude the Court from granting a motion for summary judgment. *See id.* The moving party must support its motion by citing to specific materials in the record. Fed. R. Civ. P. 56(c)(1)(A).

Once the moving party has adequately supported its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324 (internal quotation marks omitted). The

**Appx06**

nonmoving party must identify specific facts and affirmative evidence that contradict the moving party. *Anderson*, 477 U.S. at 250. The nonmoving party "cannot create an issue of fact merely by [] denying averments [] without producing any support evidence of the denials." *Thimons v. PNC Bank,* NA, 254 F. App'x 896, 899 (3d Cir. 2007) (citation omitted). Where the nonmoving party's "evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249-50). But "[i]f reasonable minds could differ as to the import of the evidence," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250-51.

In reviewing a motion for summary judgment, the Court "may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marina v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255). But if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case[,]" then there is "no genuine issue as to any material fact[,]" and summary judgment is appropriate. *Celotex Corp.*, 477 U.S. at 322.

## III.    DISCUSSION

### A. Legal Framework

The patent system aims to promote advancements of the arts and sciences by protecting investment in research and minimizing free-riding. To achieve this aim, inventors are granted the exclusive right to profit from their inventions for a period of years. *Sinclair & Carroll Co. v. Interchemical Corp.*, 325 U.S. 327, 330 (1945). This exclusive right is preserved by the presumption that all existing patents are valid, 35 U.S.C. § 22 (1994), and this presumption can

only be overcome by clear and convincing evidence to the contrary.  *See, e.g.*, *WMS Gaming Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1355 (Fed. Cir. 1999).

A design patent only protects the novel, ornamental components of the patented design. *See KeyStone Retaining Wall Sys., Inc. v. Westrock, Inc.*, 997 F.2d 1444, 1450 (Fed. Cir. 1993); *see also* 35 U.S.C. § 171(a).  In other words, only the non-functional components of a product are protected.  *Lee v. Dayton-Hudson Corp.*, 838 F.2d 1186, 1188 (Fed. Cir. 1988).

The validity of a patent may be attacked in several different ways.  For example, where a patent is "derived" from another's invention the patent will be deemed invalid.  *See Polymer Indus. Products Co. v. Bridgestone/Firestone, Inc.*, 10 Fed. App'x 812, 817-18 (Fed. Cir. 2001). Additionally, if a patent was "anticipated" by "prior art" because the patented subject matter already existed in the public domain when the patent was obtained then it will be deemed invalid. *Retractable Technologies, Inc. v. Becton, Dickinson & Co.*, 653 F.3d 1296, 1309 (Fed. Cir. 2011).

But where an inventor holds a valid patent, the inventor may bring suit against any parties that possess products which "infringe" on the patent.  35 U.S.C. § 271.  Infringement upon a design patent occurs when a party, without license of the owner, either applies the patented design, or any colorable imitation therefore, to any article of manufacture for the purpose of sale, or sells or exposes for sale any article of manufacture to which such design or colorable imitation has been applied.  *Super-Sparkly Safety Stuff, LLC v. Skyline USA, Inc.*, 836 F. App'x 895, 897 (Fed. Cir. 2020) (citing 35 U.S.C. § 289) (quotation marks omitted).

In determining whether an accused product infringes a patented design, courts engage in a two-step analysis.  *Markman v. Westview Instruments*, 52 F.3d 967, 976 (Fed. Cir. 1995) (*en banc*), *aff'd*, 517 U.S. 370 (1996).  First, a court construes the patent.  *Id.* ("The first step is determining the meaning and scope of the patent claims").  This "is an issue for the judge."  517 U.S. at 391.

**Appx08**

Specifically, with respect to a design patent, courts need not conduct elaborate claim construction in the first step because a design patent is construed as it is shown in the patent drawings. *See Dobson v. Dornan*, 118 U.S. 10, 14 (1886) (explaining that an illustration depicts a design better "than it could be by any description and a description would probably not be intelligible without the illustration."); *see also Crocs, Inc. v. ITC*, 598 F.3d 1294, 1302 (Fed. Cir. 2010) ("Design patents are typically claimed as shown in drawings, and claim construction must be adapted to a pictorial setting.") (citation omitted); *MSA Products, Inc. v. Nifty Home Products, Inc.*, 883 F. Supp. 2d 535, 540-41 (D.N.J. 2012) (citation omitted). Additionally, because design patents protect only "the novel, ornamental features of the patented design," a court may identify and factor out any "functional" aspects of the design. *OddzOn Products, Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997).

Second, the factfinder compares the accused product to the patented design to determine infringement. *Gorman Co. v. White*, 81 U.S. 511, 526 (1871); *see also OddzOn Products, Inc.*, 122 F.3d at 1404-05. This is a question of fact. *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1124 (Fed. Cir. 1993).

For the purposes of a design patent, this second step requires application of the "ordinary observer" test to determine whether infringement has occurred. *Crocs, Inc.*, 598 F.3d at 1301. The ordinary observer test concludes that infringement occurs "[i]f in the eye of the ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other." *Gorham v. White*, 81 U.S. 511, 527 (1871); *see also Crocs, Inc.*, 598 F.3d at 1303 (explaining that the plaintiff must prove that "an ordinary observer, familiar with the prior

art designs, would be deceived into believing that the accused product is the same as the patented design.").

The ordinary observer test proceeds in two stages. *See Wallace v. Ideavillage Prods. Corp.*, 640 F. App'x 970, 971-72 (Fed. Cir. 2016). "In some instances, the claimed design and the accused design will be sufficiently distinct that it will be clear without more that the patentee has not met its burden of proving the two designs would appear 'substantially the same' to the ordinary observer[.]" *Id.* at 972 (citing *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 678 (Fed. Cir. 2008) (*en banc*)). If the claimed and accused designs are found to be "sufficiently distinct" and "plainly dissimilar" at this stage, then there is no infringement, and the inquiry ends here. *See Super-Sparkly Safety Stuff, LLC*, 836 F. App'x at 898 (citing *Egyptian Goddess, Inc.*, 543 F.3d at 678).

But, "[i]n other instances, when the claimed and accused designs are not plainly dissimilar, resolution of the question whether the ordinary observer would consider the two designs to be substantially the same will benefit from a comparison of the claimed and accused designs with the prior art[.]" *Id.* And where there are "many examples of similar prior art designs[,] differences between the claimed and accused designs that might not be noticeable in the abstract can become significant to the hypothetical ordinary observer who is conversant with the prior art." *Egyptian Goddess, Inc.*, 543 F.3d at 678.

Significantly, "the patented and accused designs do not have to be identical in order for design patent infringement to be found." *OddzOn Products, Inc.*, 122 F.3d at 1405 (citing *Braun Inc. v. Dynamics Corp. of Am.*, 975 F.2d 815, 820 (Fed. Cir. 1992); *Crocs, Inc.*, 598 F.3d at 1303 ("Minor differences" do not "prevent a finding of infringement.") (citation omitted). Instead, "[i]t is the appearance of a design as a whole which is controlling in determining infringement. There

can be no infringement based on the similarity of specific features if the overall appearance of the designs are dissimilar[.]" *OddzOn Products, Inc.*, 122 F.3d at 1405. Typically, a side-by-side comparison is best. *See, e.g.*, *Crocs, Inc.*, 598 F.3d at 1304.

Although the comparison in the second step is one for the factfinder, not the judge, a district court may grant summary judgment as to noninfringement if "the accused design could not reasonably be viewed as so similar to the claimed design that a purchaser familiar with the prior art would be deceived by the similarity between the claimed and accused designs, inducing him to purchase one supposing it to be the other." *Egyptian Goddess, Inc.*, 543 F.3d at 670 (citation and quotation marks omitted). The Federal Circuit often affirms such decisions. *See, e.g.*, *Lanard Toys, Ltd. v. Dolgencorp LLC*, 958 F.3d 1337, 1347 (Fed. Cir. 2020); *Egyptian Goddess, Inc.*, 543 F.3d at 683; *OddzOn Products, Inc.*, 122 F.3d at 1407.

## A. IDV's Flawless Legs Product Does Not Infringe Upon Skull Shaver's Patented Design

Skull Shaver claims that IDV's Flawless Legs product infringes on Skull Shaver's Head Shaver design patent. In moving for summary judgment, IDV claims that its product does not infringe on Skull Shaver's patented design due to substantial differences and missing design features between the two products. Mot. at 1. Considering the legal framework explained in the preceding section, the Court now applies the two-step analysis to determine whether IDV's Flawless Legs product infringes on Skull Shaver's Head Shaver design patent. Ultimately, the Court concludes that it does not.

### 1. Claim Construction

In the first step, the Court's claim construction focuses on the ornamental features depicted in the Head Shaver's patent drawings. *See Lanard Toys, Ltd.*, 958 F.3d at 1342 ("Regarding claim construction, we have instructed trial courts that design patents 'typically are claimed as shown in

8

**Appx011**

drawings[.]") (citation omitted).  The Court does not consider any functional features of the Head Shaver's design in construing the claim.  *See id.*

Skull Shaver's design patent for its Head Shaver product is titled "Contoured Electric Head Shaver," and claims "[t]he ornamental design for a contoured electric head shaver, as shown and described."  D.E. 74-4 "Head Shaver Patent."  What is "shown and described" are the seven figures depicted below.[2]



*See id.*

Based on the above, there are at least four ornamental features within the scope of the patented design: (1) an egg-shaped handle with no corners (*see* FIG. 3 above); (2) an elongated neck separating the handle and the base (*see* FIG. 5, FIG. 6, and FIG. 7); (3) a collar beneath an elongated neck (*see* FIG. 5, FIG. 6, and FIG. 7); and (4) a flat base (*see* FIG. 5, FIG. 6, and FIG. 7).  All four of these ornamental features, considered together, contribute to the Head Shaver's overall visual effect.

---

[2] The Court omits the corresponding descriptions because they describe only the view of each figure.

IDV identifies one additional feature, which it claims is ornamental in nature: the concave grooves present on the underside and sides of the Head Shaver (*see* FIG. 1 and FIG. 2 above). The Court disagrees and factors out this feature because it is functional. Specifically, the concave grooves on the handle facilitate a user's ability to more easily hold and control the Head Shaver. *See Stiles v. Walmart*, 2022 U.S. Dist. LEXIS 203768, at *35 (E.D. Cal. Nov. 7, 2022) (concluding that a razor's angled handle was a functional feature because it allowed for a "comfortable shaving position," and that the razor's gripping surface was also a functional feature because it allowed for a "secure hold and precise control[.]").

Accordingly, the Court concludes that the four ornamental features identified above, when considered together, contribute to the Head Shaver's overall appearance.

2. *Ordinary Observer Test*

Turning now to the second step, the Court must apply the ordinary observer test. It is at this step that Skull Shaver primarily argues that material issues of fact exist, such that summary judgment in favor of IDV is inappropriate. The Court concludes that no material issues of fact exist, and as such, IDV is entitled to summary judgment.

IDV's Flawless Legs product does not infringe upon Skull Shaver's Head Shaver patented design because a side-by-side comparison of the accused product and the patented design demonstrates that the two are "substantially distinct" and "plainly dissimilar" under the ordinary observer test. Two side-by-side comparisons of view are provided below for completeness, because the two parties submitted slightly different angles, sizes, and color versus black-and-white versions. For each view and version, the Head Shaver's patent drawings are depicted on the left and the corresponding views of the Flawless Legs product are depicted on the right. *See Lanard*

*Toys, Ltd.*, 958 F.3d at 1344 (noting that the accused product is to be compared to the claimed design, not a commercial embodiment) (citation and quotation marks omitted).

**Figure 1 – IDV Version:[3]**



Mot. at 11.

**Figure 1 – Skull Shaver Version:[4]**



Opp'n at 20.

**Figure 2 – IDV Version:[5]**



Mot. at 12.

---

[3] Head Shaver (left). Flawless Legs (right).
[4] Head Shaver (left). Flawless Legs (right).
[5] Head Shaver (left). Flawless Legs (right).

11

**Appx014**

**Figure 2 – Skull Shaver Version:[6]**




Opp'n at 20.

**Figure 3 – IDV Version:**




Mot. at 12.

**Figure 3 – Skull Shaver Version:**




Opp'n at 21.

**Figure 4 – IDV Version:**




---

[6] Head Shaver (left). Flawless Legs (right).

12

**Appx015**

Mot. at 13.

**Figure 4 – Skull Shaver Version:[7]**



Opp'n at 21.

**Figure 5 – IDV Version:**



Mot. at 13.

**Figure 5 – Skull Shaver Version:**



Opp'n at 21.

---

[7] Head Shaver (left).  Flawless Legs (right).

**Figure 6 – IDV Version:[8]**

   

Mot. at 14.

**Figure 6 – Skull Shaver Version:**

   

Opp'n at 13.

**Figure 7 – IDV Version:**

   

Mot. at 15.

---

[8] Head Shaver (left). Flawless Legs (right).

14

**Appx017**

**Figure 7 – Skull Shaver Version:[9]**



FIG. 7



Opp'n at 21.

Although the accused product and the patented design share certain features, when the two are appreciated as a whole, the ornamental dissimilarities illustrate why an ordinary observer would not confuse one with the other. First, the shape of the handle: the Head Shaver design has an egg-shaped handle with no corners (*see* FIG. 1), whereas the Flawless Legs product has a computer mouse-shaped handle with two corners and a less pronounced curvature overall (*see* comparison to FIG. 1). *See Black & Decker, Inc. v. N. Am. Philips Corp.*, 632 F. Supp. 185, 190 (D. Conn. 1986) (finding that the most obvious difference between the accused and claimed designs was the shape of their respective handles). Second, the elongated neck between the handle and the base: the Head Shaver design has an elongated neck separating the handle from the base (*see* FIG. 5, FIG. 6, and FIG. 7), whereas the Flawless Legs product does not have an elongated neck—the handle appearing to be almost directly connected to the base (*see* comparison to FIG. 5, FIG. 6, and FIG. 7). *See Minka Lighting, Inc. v. Maxim Lighting Int'l, Inc.*, 2009 U.S. Dist. LEXIS 20948, at *19-20 (N.D. Tex. Mar. 16, 2009) (explaining that a distinct ornamental hook in the center portion of the lamp support arm readily distinguished the accused design from the claimed design, where the latter did not have this hook).

---

[9] Head Shaver (left). Flawless Legs (right).

15

Third, the collar below the elongated neck: the Head Shaver design has a collar directly below the elongated neck (*see* FIG. 5, FIG. 6, and FIG. 7), whereas the Flawless Legs product has no apparent collar—the handle appears directly connected to the base (*see* comparison to FIG. 5, FIG. 6, and FIG. 7).  Finally, the base: the Head Shaver design has a sleek, flat base (*see* FIG. 5 and FIG. 6), whereas the Flawless Legs product has a thicker, rounded base (*see* comparison to FIG. 5 and FIG. 6).  *See Wing Shing (BVI) Co. Ltd. v. Sunbeam Prods., Inc.*, 665 F. Supp. 2d 357, 362, 367 (S.D.N.Y. 2009) (finding that the base of the accused and claimed designs, which was a focal point of the overall design of the products, was so dissimilar that no ordinary observer would confuse the two).

All of the dissimilarities—described above—are subject to no factual disputes and when appreciated in combination, make clear that the overall appearance of the Flawless Legs Product substantially differs from that of the Head Shaver design.  As a result, an ordinary observer would not confuse one for the other.  This is true despite Skull Shaver's contention that the identity of the "ordinary observer" would alter this conclusion.  The Court will explain why.

IDV takes the position that the ordinary observer is a customer who shops in a brick-and-mortar retail store, where a substantial percentage of its Flawless Legs product is sold, and would, therefore, pay more attention to the differences between the two products.  Mot. at 4-5.  According to IDV, it then follows that because Skull Shaver's expert identified the ordinary observer as a customer who shops online, rather than an in-person shopper, that the expert's opinion is unreliable and should be excluded.  *Id.* at 21-22.  Skull Shaver responds that an online customer would be able to zoom in on photographs of the product without any distracting packaging, Opp'n at 10, which implies that an online customer would pay just as much attention to the differences in the two products as would an in-person customer.  Skull Shaver makes this implication in an effort to

support the reliability of its expert, but instead ends up demonstrating exactly why the identity of the ordinary observer, whether as an online or in-person customer, does not change the conclusion that the ordinary observer would not confuse the Head Shaver with the Flawless Legs.

This is true regardless of: whether the ordinary observer is an online customer, who, as Skull Shaver points out would likely be able to zoom in on the photographs of the product, such that he/she would observe that the overall designs of the two products are different; or whether he/she is an in-person customer, who, would be able to tell that the overall designs of the two products differ, despite the presence of packaging. *See Stiles*, 2022 U.S. Dist. LEXIS 203768, at *37-38 (explaining that a jury would compare not the two products in their packages, or even without their packages, but rather would compare the accused and claimed designs) (citing *Lanard Toys, Ltd.*, 958 F.3d at 1344). Thus, the identity of the ordinary observer does not create a material issue of fact.

Additionally, Skull Shaver argues that there are conflicting expert reports and that this raises a material issue of fact precluding summary judgment. Specifically, Skull Shaver's expert acknowledges certain ornamental differences in the Head Shaver design and the Flawless Legs product, but concludes that the differences are minor, such that the two are substantially similar. *See* Opp'n at 20-24. This is in direct contrast to IDV's expert. *See* Mot. at 20 n.4. The Court disagrees with Skull Shaver's position for a couple of reasons.

First, while Skull Shaver accuses IDV of focusing on the individual ornamental features, rather than on overall appearance, Skull Shaver does just that by directing the Court to focus on minute similarities, while ignoring the clear dissimilarities in the overall appearance of the Head Shaver design and the Flawless Legs product. For example, Skull Shaver directs the Court to side views of the Head Shaver design and of the Flawless Legs product for the proposition that the two

**Appx020**

have "an egg-shaped body located almost centrally above an essentially rectangular base with rounded edges," Opp'n at 23, but those side-by-side comparisons, considered as a whole, emphasize the different overall visual effect of the Head Shaver design and the Flawless Legs product. Specifically, the Head Shaver design has a distinct, elongated neck and collar, both of which are missing from the Flawless Legs product, as well as a distinct egg-shaped handle compared to the distinct computer mouse-shaped handle of the Flawless Legs product. Taken together, these prominent ornamental features, which are plainly evident in the side-by-side comparison, sufficiently convince the Court that there is no material issue of fact that the overall visual effect of the accused product and patented design differs.

Second, despite the conflicting conclusions of the parties' experts as to the effect of the dissimilar ornamental features on the overall visual effect, this does not create a material issue of fact because a visual comparison reveals that the accused product is not substantially similar to the patented design. *See HR US LLC v. Mizco Int'l, Inc.*, 2009 U.S. Dist. LEXIS 27056, at *39 (E.D.N.Y. Mar. 31, 2009) ("Since a visual comparison alone is sufficient to determine non-infringement under the ordinary observer test, expert testimony submitted by a plaintiff cannot create a material issue of fact where the visual comparison reveals that the alleged infringing product is not substantially similar to the patented design.") (citation omitted); *see also Bush Indus. v. O'Sullivan Indus.*, 772 F. Supp. 1442, 1450 (D. Del. 1991) (finding that "the pictures provide the most compelling evidence of our analysis under the ordinary observer test," despite the fact that the parties submitted conflicting expert declarations on what an ordinary observer would conclude); *Lawman Armor Corp. v. Master Lock Co.*, 2004 U.S. Dist. LEXIS 3705, at *25-26 (E.D. Pa. Mar. 11, 2004), *aff'd without opinion*, 112 F. App'x 55 (Fed. Cir. 2004) ("[We, the court,] note that nothing more is required under the ordinary observer analysis than conducting a

18

**Appx021**

visual comparison of the patented design and the allegedly infringing products…[And the plaintiff's] expert report, which states that Master Lock's products are substantially similar to the 621 patent, does not create a material issue of fact.") (citation omitted); *Avia Group Int'l, Inc. v. L.A. Gear Cal., Inc.*, 853 F.2d 1557, 1564 (Fed. Cir. 1988). The Court has visually compared the accused product with the patented design, which shows that the accused product and the patented design are substantially dissimilar. Thus, the conflicting expert reports do not create a material issue of fact.

The Court notes that IDV also seeks to preclude the report and testimony of Skull Shaver's expert, Hatch, but does not do this by way of a separate motion. *See* Mot. at 20-25. Skull Shaver argues that IDV's argument is improperly asserted in its moving brief for summary judgment. *See* D.E. 89-1 "Pl. Sur-Reply" at 2-3. In finding that the Flawless Legs product does not infringe upon the Head Shaver's design as a matter of law, the Court does not rely on expert opinions, but rather on the side-by-side comparison of the accused product and the patented design. Thus, at this juncture, the Court need not resolve the dispute as to whether Hatch's report and testimony should be precluded.

Next, Skull Shaver attempts to defeat IDV's motion by arguing that what IDV presents as prior art, Skull Shaver's U.S. Design Patent D 672,502 ("'504 Patent"), is not prior art. *See* Opp'n at 29-32. Because, as Skull Shaver points out, the exception in 35 U.S.C. § 102(b)(1) excludes the '504 Patent from being prior art for the Head Shaver design, the Court agrees with Skull Shaver on this argument. But this conclusion does not alter the conclusion that IDV is entitled to summary judgment because where the Court has determined that the accused product and the claimed design, as it has here, are "plainly dissimilar," then a comparison of the accused and patented designs with the prior art is not necessary. *See Egyptian Goddess, Inc.*, 543 F.3d at 678-79 (explaining that

19

**Appx022**

"[i]n other instances, when the claimed and accused designs are not plainly dissimilar," then the ordinary observer question would benefit from a comparison with prior art)."

In *Ethicon Endo-Surgery, Inc. v. Covidien, Inc*, 796 F.3d 1312, 1337 (Fed. Cir. 2015), the Federal Circuit affirmed the district court's grant of summary judgment to the defendant, despite the plaintiff's argument that "the district court should have considered the frame of reference provided by the prior art[.]"   The Federal Circuit reasoned that "the district court found the nonfunctional, ornamental aspects of the claimed and accused designs to be plainly dissimilar," and thus "did not need to compare the claimed and accused designs with the prior art, as resolution of the infringement inquiry was already clear."   *Id.* (citation omitted).   With this, the Court concludes that despite IDV's failure to identity prior art in support of its argument that there is no material issue of fact because the side-by-side comparison shows that the accused and claimed design are plainly dissimilar to the ordinary observer.

The Court will also address Skull Shaver's argument concerning compliance with the Local Patent Rules.  Specifically, Skull Shaver claims that IDV's alleged failure to comply with the Local Patent Rules should preclude summary judgment.  *See* Opp'n at 3-10.  According to Skull Shaver, IDV did not timely amend its non-infringement contentions to include its position that the ordinary observer is an in-person customer at a brick-and-mortar retail store.  *See id.*  IDV responds that it did not violate the Local Patent Rules and points to the lack of case law supporting Skull Shaver's position that IDV was required to define the ordinary observer in its non-infringement contentions. D.E. 84 "Reply" at 6-10.  According to IDV, Skull Shaver had not raised the issue of the ordinary observer's identity previously, despite having had over one year to do so after Skull Shaver was given information relevant to IDV's retail sales.  *Id.* at 7.  It follows, IDV asserts, that if IDV was required to amend its non-infringement contentions that so was Skull Shaver.  *See id.*

20

**Appx023**

But, despite the parties' dispute as to whether the Local Patent Rules were violated, this dispute does not create a material issue of fact.  The core of the parties' dispute is whether the ordinary observer is an online customer or an in-person customer at a brick-and-mortar retail store, but as the Court concludes above, regardless of whether the ordinary observer is an online or in-person customer, he/she would not confuse the accused product and the patented design because the overall visual effect of each is distinct.  Additionally, even if IDV's non-infringement contentions were deficient, as Skull Shaver claims, they do not preclude summary judgment because Skull Shaver has waited until the present motion to raise this argument for the first time. *See Shure Inc. v. Clearone, Inc.*, 2021 U.S. Dist. LEXIS 177232, at *16 n.8 (D. Del. Sept. 17, 2021) (explaining that the plaintiff's argument as to the defendant's allegedly deficient non-infringement contentions was "not an issue that should be raised for the first time in a summary judgment motion.").

Finally, Skull Shaver contends that summary judgment is inappropriate because Judge Arleo previously denied IDV's motion to dismiss.  D.E. 89-1 at 4.  According to Skull Shaver, if the two designs were not substantially similar, Judge Arleo would have dismissed the case.  *Id.* But as IDV correctly points out, denial of a motion to dismiss does not preclude a subsequent motion for summary judgment.  D.E 95 at 5.  The Court also notes that Judge Arleo's Order explicitly states that "unless it is so obvious on the face of the pleadings that there is no infringement…this Court should have the benefit of an evidentiary record."  D.E. 15 at 2 (citing *C&A Mktg., Inc. v. Gopro, Inc.*, 2016 U.S. Dist. LEXIS 54671, at *1 (D.N.J. Apr. 25, 2016).  Accordingly, with the benefit of an evidentiary record and having applied the necessary two-step analysis, the Court now grants summary judgment in favor of IDV.

Based on the foregoing reasons, the Court concludes that no reasonable juror could conclude that Skull Shaver's patented design for its Skull Shaver product was infringed upon by IDV's Flawless Legs product.  Accordingly, IDV is entitled to summary judgment as a matter of law.

**IV.    CONCLUSION**

For the reasons explained above, IDV's motion for summary judgment will be **GRANTED**.  An appropriate Order accompanies this Opinion.

Dated: December 28, 2022

_____

Hon. Evelyn Padin, U.S.D.J.

22

**Appx025**

US00D693060S

(12) **United States Design Patent**      (10) **Patent No.:**      **US D693,060 S**

Lyles      (45) **Date of Patent:**  ** **Nov. 5, 2013**

(54) **CONTOURED ELECTRIC HEAD SHAVER**

(71) Applicant: **Skull Shaver, LLC**, Mount Holly, NJ (US)

(72) Inventor: **John Lyles**, Mount Ephraim, NJ (US)

(73) Assignee: **Skull Shaver, LLC**, Mount Holly, NJ (US)

(**) Term: **14 Years**

(21) Appl. No.: **29/453,235**

(22) Filed: **Apr. 26, 2013**

(51) LOC (9) Cl. .................................................. **28-03**

(52) **U.S. Cl.**
USPC ........................................................ **D28/50**

(58) **Field of Classification Search**
USPC ............ D28/44–54; 30/32, 34.05, 34.1, 34.2,
30/43–43.92, 526–527, 44–45, 341,
30/195–223, 272.1, 226–227, 231,
30/233–233.5
See application file for complete search history.

(56)                    **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 5,520,616 | A | 5/1996 | Hofmeister |
| D426,918 | S | 6/2000 | Greene |
| 6,112,421 | A | 9/2000 | Greene |
| D446,351 | S | 8/2001 | Greene |

| | | | | |
|---|---|---|---|---|
| D528,701 | S | | 9/2006 | Oh |
| D546,001 | S | * | 7/2007 | McLachlan ................... D28/50 |
| D558,924 | S | | 1/2008 | Cafaro et al. |
| D601,301 | S | | 9/2009 | Bao |
| D663,897 | S | | 7/2012 | Aulwes et al. |
| D671,267 | S | * | 11/2012 | Hsu ............................... D28/50 |
| D672,504 | S | | 12/2012 | Lyles |
| 2009/0025234 | A1 | | 1/2009 | Carlucci |
| 2011/0016734 | A1 | * | 1/2011 | Kludjian et al. ............... 30/526 |

* cited by examiner

*Primary Examiner* — Jennifer Rivard

(74) *Attorney, Agent, or Firm* — Norman E. Lehrer

(57)                    **CLAIM**

The ornamental design for a contoured electric head shaver, as shown and described.

**DESCRIPTION**

FIG. **1** is a front top perspective view of a contoured electric head shaver showing my new design;
FIG. **2** is a front bottom perspective view thereof;
FIG. **3** is a top plan view thereof;
FIG. **4** is a bottom plan view thereof;
FIG. **5** is a left side view thereof, the right side being the mirror image thereof;
FIG. **6** is a rear end elevational view thereof, and,
FIG. **7** is a front end elevational view thereof.
The broken lines shown in the drawings illustrate portions of the article and form no part of the claimed design.

**1 Claim, 2 Drawing Sheets**





FIG. 1



FIG. 2



FIG. 3

FIG. 4

FIG. 5

FIG. 6

FIG. 7

## Proof of Service

I certify that on April 4, 2023, this BRIEF OF THE APPELLANT was filed with the United States Court of Appeals for the Federal Circuit and served upon to Ideavillage's counsel Michael Zinna, Esq., electronically by CM/ECF.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

<u>/s/ Ahmed Soliman</u>
Ahmed Soliman
Attorney for the Appellant

## Certificate of Compliance with Fed. R. App. P. 32(a)(7)(B)

1. This brief complies with the type volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) because it contains 3,319 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b).

2. This brief complies with the typeface requirements of Fed. R. App. 32(a)(5)(A) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft® Word 2023, Version 16.71. The font size is 14, and the font is Georgia.

/s/ Ahmed Soliman
Ahmed Soliman
Attorney for the Appellant
April 4, 2023