**2023-1457**

# United States Court of Appeals for the Federal Circuit

SKULL SHAVER, LLC,

*Plaintiff-Appellant,*

— v. —

IDEAVILLAGE PRODUCTS CORP.,

*Defendant-Appellee.*

*On Appeal from the United States District Court for the District of New Jersey in No. 2:18-cv-03836-EP-AME, Honorable Evelyn Padin, Judge*

## BRIEF FOR DEFENDANT-APPELLEE

MICHAEL J. ZINNA
VINCENT M. FERRARO
KELLEY DRYE & WARREN LLP
Three World Trade Center
175 Greenwich Street
New York, New York 10007
(212) 808-7800
mzinna@kelleydrye.com
vferraro@kelleydrye.com

*Counsel for Defendant-Appellee*

MAY 15, 2023

## <u>LISTING OF CLAIMS</u>

The sole claim of the D'060 Patent recites:

The ornamental design for a contoured electric head shaver, as shown and described.

The Description of the D'060 Patent recites:

FIG. 1 is a front top perspective view of a contoured electric head shaver showing my new design;

FIG. 2 is a front bottom perspective view thereof;

FIG. 3 is a top plan view thereof;

FIG. 4 is a bottom plan view thereof;

FIG. 5 is a left side view thereof, the right side being the mirror image thereof;

FIG. 6 is a rear end elevational view thereof, and,

FIG. 7 is a front end elevational view thereof.

The broken lines shown in the drawings illustrate portions of the article and form no part of the claimed design.

Below are the Figures of the D'060 Patent:



FIG. 1

FIG. 2

FIG. 3

FIG. 4

FIG. 5

FIG. 6

FIG. 7

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

| | |
|---|---|
| **Case Number** | 2023-1457 |
| **Short Case Caption** | Skull Shaver, LLC v. Ideavillage Products Corp. |
| **Filing Party/Entity** | Appellee Ideavillage Products Corporation |

> **Instructions:** Complete each section of the form. In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance. **Please enter only one item per box; attach additional pages as needed and check the relevant box**. Counsel must immediately file an amended Certificate of Interest if information changes. Fed. Cir. R. 47.4(b).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 02/14/2023

Signature: /s/ Michael J. Zinna

Name: Michael J. Zinna

FORM 9. Certificate of Interest

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☑ None/Not Applicable |
| Ideavillage Products Corp. | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐   Additional pages attached

**FORM 9. Certificate of Interest**

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐  None/Not Applicable          ☐  Additional pages attached

| | | |
|---|---|---|
| Beshada Farnese LLP | Donald A. Beshada | |
| | | |
| | | |

**5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

☑  None/Not Applicable          ☐  Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑  None/Not Applicable          ☐  Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

**Page**

LISTING OF CLAIMS .......................................................................C-1

INTRODUCTION .............................................................................1

STATEMENT OF RELATED CASES ...............................................2

JURISDICTIONAL STATEMENT ...................................................3

STATEMENT OF THE ISSUE ..........................................................3

STATEMENT OF THE CASE ...........................................................3

SUMMARY OF THE ARGUMENT ..................................................8

ARGUMENT ...................................................................................10

I.      STANDARD OF REVIEW ....................................................10

        A.      Summary Judgment..........................................................10

        B.      Design Patent Infringement.............................................11

II.     THE DISTRICT COURT CORRECTLY GRANTED SUMMARY
        JUDGMENT OF NONINFRINGEMENT REGARDING THE D'060
        PATENT .................................................................................13

        A.      The District Court Correctly Determined That The Overall
                Appearance Of The Accused Design And The Patented Design
                Are Plainly Dissimilar ....................................................15

        B.      Skull Shaver's Attacks On The District Court's Infringement
                Analysis Are Misplaced Given The Court's Focus On The
                Overall Appearances Of The Competing Designs ............26

        C.      The District Court Correctly Determined That The
                Contradictory Expert Opinions Failed To Raise A Genuine
                Issue Of Material Fact ....................................................31

CONCLUSION ...............................................................................33

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amini Innovation Corp. v. Anthony California, Inc.*,
  439 F.3d 1365 (Fed. Cir. 2006) ........................................................ 30

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) .......................................................................... 11

*Arthur A. Collins, Inc. v. N. Telecom Ltd.*,
  216 F.3d 1042 (Fed. Cir. 2000) ........................................................ 11

*Bush Indus. v. O'Sullivan Indus.*,
  772 F. Supp. 1442 (D. Del. 1991) ..................................................... 33

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) .......................................................................... 11

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
  545 F.3d 665 (Fed. Cir. 2008) (en banc) ....................................*passim*

*Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*,
  796 F.3d 1312 (Fed. Cir. 2015) ...................................... 13, 25, 29, 32

*Harel v. K.K. Int'l Trading Corp.*,
  994 F. Supp. 2d 276 (E.D.N.Y. 2014) .............................................. 32

*Invitrogen Corp. v. Clontech Labs., Inc.*,
  429 F.3d 1052 (Fed. Cir. 2005) ........................................................ 11

*Jackson v. Danberg*,
  594 F.3d 210 (3d Cir. 2010) ............................................................. 11

*Lanard Toys, Ltd. v. Dolgencorp LLC*,
  958 F.3d 1337 (Fed. Cir. 2020) ................................................ *passim*

*Lanard Toys Ltd. v. Toys "R" Us-Delaware, Inc.*,
  No. 3:15-cv-849-J-34PDB, 2019 U.S. Dist. LEXIS 46911 (M.D. Fla.
  Mar. 21, 2019)................................................................................... 32

*Lawman Armor Corp. v. Master Lock Co.*,
No. 02-cv-6605, 2004 U.S. Dist. LEXIS 3705
(E.D. Pa. Mar. 11, 2004), *affirmed without opinion*,
112 Fed. Appx. 55 (Fed. Cir. 2004) .................................................. 33

*MRC Innovations, Inc. v. Hunter Mfg., LLP*,
747 F.3d 1326 (Fed. Cir. 2014) ......................................................... 13

*Think Green Ltd. v. Medela AG*,
No. 21-cv-5445, 2022 U.S. Dist. LEXIS 184040
(N.D. Ill. Oct. 7, 2022) ...................................................................... 32

*Unidynamics Corp. v. Automatic Prods. Int'l Ltd.*,
157 F.3d 1311 (Fed. Cir. 1998) ......................................................... 13

*Wallace v. Ideavillage Prods. Corp.*,
640 Fed. Appx. 970 (Fed. Cir. 2016)............................................*passim*

*Wing Shing Prods. (BVI) Co. v. Sunbeam Prods.*,
665 F. Supp. 2d 357 (S.D.N.Y. 2009) ......................................... 32-33

*Young v. Martin*,
801 F.3d 172 (3d Cir. 2015) .............................................................. 10

**Statutes**

28 U.S.C. § 1331 ................................................................................... 3

28 U.S.C. § 1338(a) .............................................................................. 3

## **INTRODUCTION**

In a well-reasoned and well-supported decision, the U.S. District Court for the District of New Jersey granted summary judgment of noninfringement in favor of Appellee Ideavillage Products Corp. ("Ideavillage") holding Ideavillage's Flawless female leg shaver ("Flawless product" or "accused product") does not infringe Skull Shaver, LLC's ("Skull Shaver") patented design as a matter of law. In doing so, the District Court compared the two designs side-by-side, applied the ordinary observer test according to this Court's precedent, and properly concluded that the overall appearance of the two designs is substantially distinct and plainly dissimilar such that an ordinary observer could not find the designs to be "substantially the same." Skull Shaver identifies nothing that should disturb this result. The District Court's decision should be affirmed.

Skull Shaver raises two unavailing issues on appeal. *First*, Skull Shaver asserts that the District Court improperly applied the ordinary observer test by relying on "minor differences" between the accused product and the patented design instead of comparing their overall appearance. However, it is abundantly clear that the District Court closely adhered to this Court's precedent and determined that the accused Flawless product does not infringe the asserted patent because their *overall appearances* are plainly dissimilar. This argument should therefore be rejected.

1

*Second*, Skull Shaver argues that the mere existence of dueling expert opinions automatically required the District Court to deny summary judgment. Yet, there is no such bright-line rule. This Court has repeatedly affirmed summary judgment of noninfringement in design patent cases in the face of competing expert reports where, as here, a visual comparison reveals that the accused product is not substantially similar to the patented design. Accordingly, this argument should be rejected and the District Court's finding that the conflicting expert reports does not create a material issue of fact that precludes summary judgment should not be disturbed.

For these reasons, the District Court's grant of summary judgment of noninfringement should be affirmed.

## STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule 47.5(a), counsel for Ideavillage states that no appeal from this civil action has previously been before this or any other appellate court. Counsel is unaware of any other case pending in this or any other court that will directly affect or be directly affected by this Court's decision in the pending appeal.

## JURISDICTIONAL STATEMENT

Ideavillage agrees with the Jurisdictional Statement set forth in Appellant's brief but adds that in addition to 28 U.S.C. § 1331, the District Court also had subject matter jurisdiction over the underlying action under 28 U.S.C. § 1338(a).

## STATEMENT OF THE ISSUE

Whether the District Court correctly granted summary judgment of noninfringement of U.S. Design Patent No. D693,060 (the "D'060 Patent") because Ideavillage's Flawless product is plainly dissimilar from the patented design and thus Skull Shaver has failed to meet its burden of proving infringement as a matter of law.

## STATEMENT OF THE CASE

### A.    Procedural History

On March 20, 2018, Skull Shaver filed suit against Ideavillage alleging that Ideavillage's Flawless product infringed Skull Shaver's D'060 Patent.  Appx312-315.  In response to the Complaint, Ideavillage filed a motion to dismiss asserting that the case should be dismissed because the overall appearance of the patented design and the Flawless product are not substantially the same such that there can be no infringement, as a matter of law.  Appx325-347.

3

On December 21, 2018, the District court denied Ideavillage's motion to dismiss. Appx348-350. However, contrary to Skull Shaver's assertion, the District Court did not point to similarities between the two designs in its decision on the motion to dismiss, but rather merely stated that it appeared Plaintiff had plausibly *alleged* substantial similarities and that the Court would benefit from a complete evidentiary record to determine the differences between the two designs. Appx349-350.

Discovery ensued. Among other things, the parties exchanged expert reports regarding the issue of infringement. Appx56-273. Following discovery, Ideavillage moved for summary judgment asserting that, under the ordinary observer test, the Flawless product did not infringe the D'060 Patent as a matter of law. Appx351-590. Ideavillage identified no less than four major and prominent design differences between the Flawless product and the D'060 Patent, all of which, when taken together, demonstrated that the overall appearance of the two designs were not substantially similar but rather plainly dissimilar, as a matter of law. Appx359-364, Appx368-376, Appx385-389, Appx430-456.

On December 28, 2022, the District Court issued a detailed and well-reasoned opinion granting summary judgment in favor of Ideavillage, finding that the Flawless product did not infringe the D'060 Patent as a matter of law. Appx4-25. The court reached this conclusion after properly applying the ordinary

observer test espoused in *Egyptian Goddess, Inc. v. Swisa, Inc.* and its progeny. *Id.* Notably, the District Court clearly and repeatedly stated in its opinion that the *overall appearance* of the Flawless product is plainly dissimilar from that of the patented design such that an ordinary observer would not confuse one for the other. *Id.* Put simply, the court properly concluded that no reasonable juror could find that Skull Shaver's patented design was infringed by Ideavillage's Flawless product and therefore Ideavillage was entitled to summary judgment of noninfringement as a matter of law. *Id.*

In granting summary judgment, the District Court also correctly found that the parties' conflicting expert reports regarding infringement did not create a genuine issue of material fact because the visual comparison of the two designs revealed that the accused product is not substantially similar to the patented design. Appx20-22.

## B.    The D'060 Patent

On November 5, 2013, the United States Patent and Trademark Office issued the D'060 Patent to Skull Shaver. Appx26-28. The D'060 Patent is entitled "Contoured Electric Head Shaver" and claims "[t]he ornamental design for a contoured electric head shaver, as shown and described." *Id.* The D'060 Patent contains the following seven figures showing different views of the claimed "contoured electric head shaver":

5



*Id.* The design covered by the D'060 Patent has four (4) prominent ornamental features:

1.  A continuously smooth, egg-shaped handle with concave grooves on the underside and sides of the handle;

2.  An extended neck;

3.  A collar; and

4.  A thin, flat shave head.



Appx359-362, Appx385-387, Appx430-456. None of those ornamental features appear in the Flawless product. Appx362-364, Appx368-376, Appx387-389, Appx435-456.

## C.    Ideavillage's Flawless Product

Ideavillage launched the Flawless product in 2018. Appx362, Appx387. It was designed as a female leg shaver.[1] Appx362-364, Appx387-389. Prior to launch, Ideavillage conducted research and reviewed various patents to ensure that the design of the Flawless product did not infringe any patents. Appx362, Appx387. That research included a review of the D'060 Patent. Appx362, Appx387.

The overall appearance of the Flawless product is plainly dissimilar to that of the claimed design of the D'060 Patent. Appx11-25, Appx368-376, Appx435-456. Specifically, the Flawless product contains a computer mouse-shaped handle with hard corners and a less pronounced curvature overall, and a thick rounded base with recessed shaving blades. Appx18-19, Appx368-376, Appx441-456. It

---

[1] In its Statement of the Case, Skull Shaver incorrectly asserts that the accused Flawless product is "also a contoured design for an electric *head* shaver." Br. 4 (emphasis added). However, the undisputed record shows that the Flawless product is an electric leg shaver designed for and marketed to females. Appx362-364, Appx387-389.

does not contain an extended neck or a collar.  Appx18-19, Appx368-376,

Appx441-456.  The Flawless products appears as follows:



Appx14-18, Appx362, Appx435-436.


## SUMMARY OF THE ARGUMENT

The District Court correctly found that Ideavillage did not infringe the

D'060 Patent as a matter of law and thus properly decided summary judgment in

Ideavillage's favor.  The decision was detailed, well-reasoned and supported by the

evidentiary record.  Because, contrary to Skull Shaver's pleas, the District Court

did not err in applying the ordinary observer test nor abuse its discretion when it

granted Ideavillage's motion for summary judgment, the District Court's decision

should be affirmed.  Both the law and undisputed material facts defeat Skull

Shaver's challenges to the judgment on appeal.

First, a side-by-side comparison of the D'060 Patent and the Flawless

product makes clear that the overall appearance of these two designs is

"substantially distinct" and "plainly dissimilar" such that the ordinary observer could not find the designs to be "substantially the same" as a matter of law.

Second, the District Court properly applied the ordinary observer test to determine that summary judgment of noninfringement was warranted. The District Court clearly and repeatedly stated that the *overall* appearance of the patented and accused designs is so plainly dissimilar that summary judgment was warranted under this Court's precedent. Importantly, and contrary to Skull Shaver's assertion, the District Court did not focus on minor differences in the two designs but rather identified significant differences between them and used those differences to properly conclude that the *overall* appearance of the accused product is substantially distinct and plainly dissimilar from that of the patented design such that, in the eye of the ordinary observer, giving such attention as a purchaser usually gives, the ordinary observer would not be deceived into purchasing one supposing it to be the other. This Court has repeatedly approved the use of this methodology and has affirmed grants of summary judgment of noninfringement in design patent cases when it has been employed.

Third, the District Court properly granted summary judgment of noninfringement despite the parties' conflicting expert reports. Contrary to Skull Shaver's assertion, this Court routinely affirms summary judgment of noninfringement of design patents in the face of competing expert testimony

where, as here, a visual comparison revealed that the accused product is not substantially similar to the patented design. As such, the District Court here properly determined that the parties' conflicting expert reports did not create a material issue of fact and, therefore, it did not abuse its discretion when it granted Ideavillage's motion for summary judgment in the face of these reports.

Accordingly, the District Court's judgment should be affirmed in its entirety.

## ARGUMENT

### I.     STANDARD OF REVIEW

#### A.     Summary Judgment

This Court reviews the grant of summary judgment under the law of the regional circuit from which the case originates, here, the Third Circuit. *See*, *e.g.*, *Wallace v. Ideavillage Prods. Corp.*, 640 Fed. Appx. 970, 971 (Fed. Cir. 2016). The Third Circuit reviews a district court's grant of summary judgment *de novo*. *Id.* (citing *Al-Sharif v. U.S. Citizenship & Immigration Servs.*, 734 F.3d 207, 210 n.3 (3d Cir. 2013) (en banc)).

Summary judgment is appropriate when, "drawing all reasonable inferences in favor of the nonmoving party, there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." *Young v. Martin*, 801 F.3d 172, 177 (3d Cir. 2015) (internal citations and modifications omitted); *see*

Case: 23-1457    Document: 11    Page: 20    Filed: 05/15/2023

*also* Fed. R. Civ. P. 56(a).  An issue is "genuine" only if a reasonable jury could possibly find in the non-movant's favor on the issue.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  A fact is "material" only if it influences the outcome under the applicable law.  *Id.* at 248.  Thus, "the mere existence" of "some" alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.  *Id.* at 247-48.

"Evidence that is 'merely colorable,' or is 'not significantly probative,' will not prevent summary judgment."  *Invitrogen Corp. v. Clontech Labs., Inc.*, 429 F.3d 1052, 1076 (Fed. Cir. 2005) (quoting *Anderson*, 477 U.S. at 249-50).  Speculation and conjecture also will not suffice to defeat summary judgment.  *See Jackson v. Danberg*, 594 F.3d 210, 227 (3d Cir. 2010).  Nor will conclusory expert testimony.  *See Arthur A. Collins, Inc. v. N. Telecom Ltd.*, 216 F.3d 1042, 1046 (Fed. Cir. 2000).  Put simply, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case[,]" then there is "no genuine issue as to any material fact[,]" and summary judgment is appropriate.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## B.    Design Patent Infringement

This Court reviews issues unique to patent law under its own, Federal Circuit law.  To determine whether a design patent has been infringed, the Court compares the accused product to the patented design using the "ordinary observer"

test. *Egyptian Goddess, Inc. v. Swisa, Inc.*, 545 F.3d 665, 670 (Fed. Cir. 2008) (en

banc). Under the "ordinary observer" test, design patent infringement is defined as

follows:

> [I]f, in the eye of an ordinary observer, giving such attention as a
> purchaser usually gives, two designs are substantially the same, if
> the resemblance is such as to deceive such an observer, inducing
> him to purchase one supposing it to be the other, the first one
> patented is infringed by the other.

*Id.* (internal citations omitted). Typically, a side-by-side comparison of the two

designs is the best way to carry out this analysis. *See*, *e.g.*, *Wallace*, 640 Fed.

Appx. at 972-73.

The "ordinary observer" test may proceed in two stages. *See Wallace*, 640

Fed. Appx. at 971-72. However, in many cases, as is the case here and consistent

with the District Court's finding, "the claimed design and the accused design will

be sufficiently distinct that it will be clear without more that the patentee has not

met is burden of proving the two designs would appear 'substantially the same' to

the ordinary observer[.]" *Id.* at 972. Here, as correctly found by the District Court,

a visual comparison of the D'060 Patent's drawings and the Flawless product

indisputably shows that the two designs are "sufficiently distinct" such that no

ordinary observer could find them to be "substantially the same." *See Egyptian*

*Goddess*, 543 F.3d at 678; *see also Wallace*, 640 Fed. Appx. at 972-75 (affirming

summary judgment of noninfringement where "no reasonable fact-finder would

find [the two designs] to be substantially the same under the first stage of the ordinary observer test" because, based on a side-by-side comparison, the two designs are "plainly dissimilar"); *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1335 (Fed. Cir. 2015) (affirming summary judgment of noninfringement at the first stage of the ordinary observer test "[w]here the claimed and the accused design are 'sufficiently distinct' and 'plainly dissimilar,'" because in such cases, "the patentee fails to meet its burden of proving infringement as a matter of law").

## II.    THE DISTRICT COURT CORRECTLY GRANTED SUMMARY JUDGMENT OF NONINFRINGEMENT OF THE D'060 PATENT

As an initial matter, the District Court correctly ruled that, as a matter of law, the Flawless product does not infringe the D'060 Patent.  This Court has repeatedly held that "design patents have almost no scope beyond the drawings." *Unidynamics Corp. v. Automatic Prods. Int'l Ltd.*, 157 F.3d 1311, 1323 (Fed. Cir. 1998); *see also MRC Innovations, Inc. v. Hunter Mfg., LLP*, 747 F.3d 1326, 1333 n.1 (Fed. Cir. 2014) (citing *In re Mann*, 861 F.2d 1581, 1582 (Fed. Cir. 1988)). For this reason, and because material facts are often undisputed, summary judgment of noninfringement is commonplace in design patent cases.  *See*, *e.g.*, *Lanard Toys, Ltd. v. Dolgencorp LLC*, 958 F.3d 1337, 1345 (Fed. Cir. 2020); *Wallace*, 640 Fed. Appx. at 978; *Ethicon Endo-Surgery*, 796 F.3d at 1337; *Egyptian Goddess*, 543 F.3d at 678.  Here, the material facts (i.e. the differences

between the design of the accused product and the patented design) are not disputed; Skull Shaver merely claims that these differences are not enough to support summary judgment.  Because a side-by-side comparison of the two designs makes clear that they are plainly dissimilar, the District Court's judgment of noninfringement should be affirmed.

Skull Shaver only raises two issues on appeal, neither of which should disturb the District Court's ruling.  *First,* Skull Shaver argues that the District Court improperly applied the ordinary observer test by focusing on minor differences between the patented design and accused product instead of their overall appearance.  Br. 9-18.  The District Court, however, repeatedly stated that its finding of noninfringement was based on the plain dissimilarities of the *overall* appearance of these two designs.  As such, this argument should be rejected.  *Second,* Skull Shaver argues that conflicting expert reports on infringement automatically create a genuine issue of material fact that defeats summary judgment.  Br. 6-9.  This argument, however, is both legally and factually flawed and should also be rejected.

Accordingly, the District Court's decision granting summary judgment of noninfringement should be affirmed.

### A.   The District Court Correctly Determined That The Overall Appearance Of The Accused Design And The Patented Design Are Plainly Dissimilar

The District Court conducted an extensive and detailed analysis that included comparing the overall appearance of the Flawless product to the claimed design of the D'060 Patent.[2]  Appx7-25.  This analysis was correct because the undisputed evidence clearly shows the plain dissimilarity between the overall appearance of these two designs.  Accordingly, the District Court's noninfringement ruling should be affirmed.

As the District Court correctly observed, "[a]lthough the accused product and the patented design share certain features, when the two are appreciated as a whole, the ornamental dissimilarities illustrate why an ordinary observer would not confuse one with the other."  Appx18.  A side-by-side comparison of the patent drawings with images of the Flawless product shows the plain dissimilarity between the overall appearance of these two devices.

In performing its analysis, the District Court first correctly identified four prominent ornamental features within the scope of the patented design:  (1) an egg-shaped handle with no corners (*see* FIG. 3 below); (2) an elongated neck

---

[2] The D'060 Patent claims a "contoured electric head shaver."  Appx26-28. However, the Flawless product is designed and marketed as a women's leg shaver. Appx362-364, Appx387-389.  That fact, alone, makes it highly unlikely that any ordinary observer intending to purchase the Flawless product would be deceived into believing it to be the patented head shaver, or vice versa.

15

separating the handle and the base (*see* FIG. 5, FIG. 6, and FIG. 7); (3) a collar

beneath an elongated neck (*see* FIG. 5, FIG. 6, and FIG. 7); and (4) a flat base (*see*

FIG. 5, FIG. 6, and FIG. 7).  Appx12.  These four ornamental features, considered

together, contribute to the patented design's overall appearance:



Appx12, Appx361, Appx386-387, Appx430-434, Appx436-456.

The District Court then correctly identified numerous dissimilarities between

the patented design and features of the Flawless product.  Appx13-19.  The Court

used side-by-side comparisons of the claimed design and accused device to

illustrate these differences.  *Id.*  Below are side-by-side comparisons and a

summary of the significant differences between the patented design and the

Flawless product considered by the District Court:

| D'060 Patent | Flawless Product |
|---|---|
| FIG. 1 |  |
| FIG. 1 of the D'060 Patent | Flawless Product |
| FIG. 1 requires a device with a handle that has two pronounced concave insets on the sides and concave grooves on the bottom. Appx369, Appx438, Appx443-444, Appx447-452. The handle is connected to the shaver via an extended neck and collar. Appx369, Appx441, Appx444-447. The shave head has a flat top surface. Appx369, Appx441-444, Appx453-455. | The Flawless product does not have two insets or two concave grooves on the handle. Appx369, Appx450-451. The Flawless product does not have an extended neck or collar connecting the handle with the shave head. Appx369, Appx441-447. In contrast to the D'060 Patent, the Flawless product has a handle directly connected to the shave head which has a rounded top surface. Appx369, Appx441-442, Appx444-447. |

| D'060 Patent | Flawless Product |
|---|---|
|  |  |
| FIG. 2 of the D'060 Patent | Flawless Product |
| FIG. 2 requires a handle with pronounced concave insets on the sides, two concave grooves on the bottom, and the handle has an extended neck and collar to connect to the shave head.  Appx370, Appx438-439, Appx441-452. | In contrast, the Flawless product does not have two pronounced concave insets, two concave grooves on its bottom side and an extended neck and collar.  Appx370, Appx441-442, Appx444-447, Appx449-451.  Rather, the Flawless product has a handle directly attached to the shave head.  Appx370, Appx441-442, Appx444-447. |

18

| D'060 Patent | Flawless Product |
|---|---|
| FIG. 3 |  |
| FIG. 3 of the D'060 Patent | Flawless Product |
| FIG. 3 requires a handle that has a rounded or essentially egg shape that tapers from wider in the back to narrower in the front. Appx370, Appx452-453. The D'060 Patent also requires a smooth and continuously curved egg shape. Appx370, Appx452-453. | In contrast, the Flawless product has a handle with a basically uniform width from the front to the back of the handle, with a smooth squared off shape with slightly rounded corners, a curved top side, slightly curved sides, and a flattened or straight backside that creates corners. Appx370, Appx443, Appx449, Appx452-453. |

| D'060 Patent | Flawless Product |
|---|---|
| FIG. 4 of the D'060 Patent | Flawless Product |
| FIG. 4 requires a shave head with four blades that form a cross where the rows of shaving heads are offset. Appx371, Appx453-455. FIG. 4 also requires deep insets between the shaving heads that are nearly 90 degree angles. Appx371, Appx453-455. | The Flawless product has a shave head that is arranged in a generally square pattern with rounded edges and sides. Appx371, Appx453-455. The Flawless product has very shallow round insets between the outside of each of the blades. Appx371, Appx453-455. |



FIG. 4

| D'060 Patent | Flawless Product |
|---|---|
| **FIG. 5 of the D'060 Patent** | Flawless Product |



FIG. 5 requires a shaving apparatus with a handle and a shave head that are connected by an extended neck and collar. Appx371-372, Appx441-442, Appx444-447. FIG. 5 also requires a rounded top side of the handle, a side with a pronounced concave inset, and a bottom side that has concave grooves that run across the width of the underside of the handle. Appx371-372, Appx441-452. The shave head has a generally flat top surface and is generally thin. Appx371-372, Appx441-444, Appx453-455.

In contrast, the Flawless products has a handle that is directly attached to the shave head, and is missing an extended neck and collar. Appx371-372, Appx441-442, Appx441-447. The handle of the Flawless product has a different shape than the '060 Patent and is missing the pronounced concave insets on the sides and the bottom lacks two concave grooves. Appx371-372, Appx441-452. In contrast to the pronounced concave insets, the Flawless product has a grip which wraps around ¾ of the handle. Appx371-372, Appx447-452. In contrast to the flat top surface of the shave head of the D'060 Patent, the Flawless product has a shave head that has a rounded top surface and is chunky. Appx371-372, Appx441-443, Appx454-455.

| D'060 Patent | Flawless Product |
|---|---|
|  |  |
| FIG. 6 of the D'060 Patent | Flawless Product |
| FIG. 6 requires an extended neck and collar connecting the handle to the shave head.  Appx372, Appx441-442, Appx444-447.  The handle has two pronounced concave insets and a generally straight bottom.  Appx372, Appx441-452. | In contrast, the Flawless product does not have an extended neck, a collar and two pronounced concave insets on the side of its handle.  Appx372, Appx441-452.  The Flawless product has a handle directly attached to the shave head and its bottom is rounded.  Appx372, Appx441-452. |

| D'060 Patent | Flawless Product |
|---|---|
|  | |
| FIG. 7 of the D'060 Patent | Flawless Product |
| Like FIG. 6, FIG. 7 requires an extended neck and collar connecting the handle to the contact element. Appx373, Appx441-442, Appx444-447. The handle has two pronounced concave insets and generally straight bottom. Appx372, Appx441-452. | In contrast, the Flawless product does not have an extended neck, a collar and two pronounced concave insets on the side of its handle. Appx372, Appx441-452. The Flawless product has a handle directly attached to the contact element and its bottom is rounded. Appx372, Appx441-452. |

Appx369-376.

In reviewing the side-by-side comparisons, the District Court correctly identified four major ornamental dissimilarities between the Flawless product and the patented design, which when appreciated as a whole, illustrate why an ordinary observer would not confuse one with the other. Appx13-19. *First*, the shape of the handles: the patented design has an egg-shaped handle with no corners (*see* FIG. 1), whereas the Flawless product has a computer mouse-shaped handle with two

corners and a less pronounced curvature overall (*see* comparison to FIG. 1). Appx18.  *Second*, the elongated neck between the handle and the base: the patented design has an elongated neck separating the handle from the base (*see* FIG. 5, FIG. 6, and FIG. 7), whereas the Flawless product does not have an elongated neck – the handle is directly connected to the base (*see* comparison to FIG. 5, FIG. 6, and FIG. 7).  Appx18.  *Third*, the collar below the elongated neck: the patented design has a collar directly below the elongated neck (*see* FIG. 5, FIG. 6, and FIG. 7), whereas the Flawless product has no collar (*see* comparison to FIG. 5, FIG. 6, and FIG. 7).  Appx19.  *Fourth*, the base or shave head:  the patented design has a sleek, flat base or shave head (*see* FIG. 5 and FIG. 6), whereas the Flawless product has a thicker, rounded base or shave head (*see* comparison to FIG. 5 and FIG. 6). Appx19.  These differences are illustrated in the below side-by-side comparison:[3,4]

---

[3] The District Court determined that the concave inset and concave grooves were functional and thus it did not consider those features in its analysis.  Appx11-13.

[4] Skull Shaver's expert, Paul Hatch, admitted that the Flawless products did not have several of these features.  Appx576-577 (the Flawless product does not have a neck or a stem between the handle and the shave head); Appx577-578 (the Flawless product lacks a collar).



Appx368-376.

The above comparisons are clear.  There can be no genuine dispute that the overall appearance of the Flawless product substantially differs from that of the claimed design of the D'060 Patent.  Considering all these differences in light of the limited scope of design patent protection, this is an easy case for summary judgment.  These "plainly dissimilar" designs are "sufficiently distinct" such that no reasonable fact-finder could find that an ordinary observer would be deceived into thinking one was the other.  *See Egyptian Goddess*, 543 F.3d at 678; *see also Lanard Toys*, 958 F.3d at 1345; *Wallace*, 640 Fed. Appx. at 978; *Ethicon Endo-Surgery*, 796 F.3d at 1337.

Accordingly, the District Court's judgment of noninfringement should be affirmed.

**B.     Skull Shaver's Attacks On The District Court's Infringement Analysis Are Misplaced Given The Court's Focus On The Overall Appearances Of The Competing Designs**

As explained in Section II.A, *supra*, the District Court properly applied the ordinary observer test, which is reason enough to affirm its decision.  Putting that aside, Skull Shaver contends that despite the District Court's clear pronouncements and citations, the court failed to compare the overall design of the D'060 Patent and the accused product and instead focused on single minor differences in isolation.  Br. 12-17.  Skull Shaver is wrong.  While the court discussed the differences in the parties' designs by mentioning prominent design differences to anchor its discussion, the Opinion is clear that "it is the appearance of a design as a whole which is controlling in determining infringement."  Appx10-11 (quoting *OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997)).  Indeed, the District Court's Opinion is replete with the terms "overall visual effect," "overall appearance," "overall designs," "appreciated as a whole," "appreciated in combination," "considered as a whole" and similar terms when explaining why the patented design and accused product are plainly dissimilar.

Importantly, the District Court no less than five separate times pointedly stated that there could be no infringement here, as a matter of law, because the *overall appearance* of the patented design and the accused product are plainly dissimilar:

- "[T]he ordinary observer … would not confuse the accused product and the patented design because the *overall visual effect* of each is distinct."  Appx24 (emphasis added);

- "[W]hen the two [designs] *are appreciated as a whole*, the ornamental dissimilarities illustrate why an ordinary observer would not confuse one with the other."  Appx18 (emphasis added);

- "All of the dissimilarities[,] … *when appreciated in combination*, make clear that the *overall appearance* of the Flawless Legs Product substantially differs from that of the Head Shaver design."  Appx19 (emphasis added);

- "[T]hose side-by-side comparisons, *considered as a whole*, emphasize the different *overall visual effect* of the Head Shaver design and the Flawless Legs product." Appx21 (emphasis added); and

- "*Taken together*, these prominent ornamental features, which are plainly evident in the side-by-side comparison, sufficiently convince the Court that there is no material issue of fact that the *overall visual effect* of the accused product and patented design differs," Appx21 (emphasis added).

Further, besides simply saying it compared the overall appearance of the patented design and the accused product, the District Court's analysis clearly

27

shows that this is in fact what the court did.  As explained in Section II.A., *supra*, the court first identified four prominent ornamental features that, when considered together, contribute to the patented design's overall appearance.  Appx11-13.  The court then explained how each of these four prominent ornamental features of the patented design were either missing or different from the ornamental features of the accused Flawless product.  Appx13-21.  Finally, the Court concluded that "[t]aken together, these prominent ornamental features, which are plainly evident in the side-by-side comparison, sufficiently convince the Court that there is no material issue of fact that the overall visual effect of the accused product and patented design differs."  Appx21.  It is thus clear that the court did not merely isolate minor differences between the two designs, as Skull Shaver suggests.  Rather, the court used the differences between the four most important ornamental features to show and explain why the overall appearance of the patented design and accused product are plainly dissimilar.  This exact methodology is frequently used and approved by this Court and it should be approved here.  *See*, *e.g.*, *Lanard*, 958 F.3d at 1343-44 (affirming a noninfringement finding based on differences regarding three ornamental features of the patented design, reasoning that the "district court struck the correct balance of considering the ornamental aspects of the design while remaining focused on how an ordinary observer would view the overall design"); *Wallace*, 640 Fed. Appx. at 972-75 (affirming a noninfringement

finding based on differences regarding six ornamental features of the patented design that highlighted why the overall appearance of the two designs in question were plainly dissimilar); *Ethicon*, 796 F.3d at 1336-37 (same).

Skull Shaver's contention that a proper application of the ordinary observer test shows that the accused product and the D'060 Patent are substantially the same is similarly misguided. Br. 13-17. To prop up its argument, Skull Shaver provides side-by-side comparisons of various views of the patented design and the accused product coupled with a word-for-word regurgitation of its argument before the District Court. *Id.* Skull Shaver's comparison only serves to confirm that it is Skull Shaver that did not properly conduct the ordinary observer test, not the District Court. Indeed, this comparison and argument was soundly and properly rejected by the District Court. Appx20-21. The fatal flaw in Skull Shaver's argument, as correctly identified by the District Court, is that while Skull Shaver accuses Ideavillage of focusing on the individual ornamental features, rather than on the overall appearance, Skull Shaver does just that by directing the Court to focus on minute and insignificant alleged similarities, while ignoring the clear dissimilarities in the overall appearance of the patented design and the Flawless product. Appx20-21. For example, Skull Shaver provides side views of the patented design and of the accused product to show that that the two have "an egg-shaped body located almost centrally above an essentially rectangular base with

rounded edges." Br. 15-16. Yet, as shown and explained in Section II.A., *supra*, those side-by-side comparisons, considered as a whole, actually emphasize the different overall visual effect of the two designs. Specifically, the patented design has a distinct, elongated neck and collar, both of which are missing from the Flawless product. The patented design also has as a distinct egg-shaped handle and a sleek, flat shave head when compared to the distinct computer mouse-shaped handle and thick, rounded blade head of the Flawless product. The District Court thus correctly determined that, contrary to Skull Shaver's assertion, "[t]aken together, these prominent ornamental features, which are plainly evident in the side-by-side comparison, [demonstrate] that there is no material issue of fact that the overall visual effect of the accused product and patented design differs." Appx21.

Lastly, Skull Shaver's reliance on *Amini Innovation Corp. v. Anthony California, Inc.*, 439 F.3d 1365 (Fed. Cir. 2006), to argue that the court engaged in an element-by-element analysis here is misplaced. In *Amini*, the lower court considered a design patent for a bed frame with ornamental carvings and granted summary judgment. *Id.* at 1371-1372. This Court vacated that ruling on the ground that the court had "mistakenly analyzed each element separately instead of analyzing the design as a whole" and "focused too narrowly on the isolated ornamental features, namely the ornamental wood carvings shown in the

30

application." *Id.* Here, by contrast, no such error occurred; the District Court focused on the overall appearance and even refused to consider differences identified by Ideavillage's expert that the court found would not impact the overall appearance of the design to the ordinary observer. Appx11-13. This is the antithesis of a flawed element-by-element analysis.

For all of these reasons, the Court should reject Skull Shaver's challenge to the District Court's entry of summary judgment of noninfringement.

### C. The District Court Correctly Determined That The Contradictory Expert Opinions Failed To Raise A Genuine Issue Of Material Fact

In a last attempt to avoid summary judgment, Skull Shaver argues that the mere existence of contradictory expert opinions on the issue of infringement automatically precludes summary judgment of noninfringement in design patent cases. Br. 6-9. This is a clear misstatement of the law. Indeed, contrary to Skull Shaver's assertion, this Court routinely affirms the grant of summary judgment of noninfringement in design patent cases in the face of conflicting expert reports. *See*, *e.g.*, *Wallace*, 640 Fed. Appx. at 972 (comparing the patent drawings for a body washing brush to the photographs of an accused product set forth in plaintiff's expert report and "agree[ing] with the district court that no reasonable fact-finder would find them to be substantially the same under … the ordinary observer test"); *Lanard Toys*, 958 F.3d at 1343-45 (affirming summary judgment

31

despite opposing expert opinions); *Ethicon*, 796 F.3d at 1334-37 (same); *Egyptian Goddess*, 543 F.3d at 681-82 (same).  The Court should reject Skull Shaver's argument for this reason alone.

Moreover, none of the three cases that Skull Shaver relies on to support its incorrect recitation of the law stand for the proposition that contradictory expert reports automatically defeat summary judgment of noninfringement in a design patent case.  Br. 6-8.  The *Hana* case dealt with the issue of "tacking" in a trademark case.  Both the *B-K Lighting* and *Crown Packaging* cases dealt with the issue of invalidity of a utility patent.  As such, these cases are inapposite and do not support Skull Shaver's position here.

Skull Shaver's assertion is also particularly misplaced in light of the facts of this case.  Notably, in a 2019 decision affirmed by this Court, the District Court for the Middle District of Florida pointedly stated that "[e]xpert testimony cannot create a material issue of fact, where a visual comparison reveals that the alleged infringing design is not substantially similar to the patented design."  *Lanard Toys Ltd. v. Toys "R" Us-Delaware, Inc.*, No. 3:15-cv-849-J-34PDB, 2019 U.S. Dist. LEXIS 46911, at *52 (M.D. Fla. Mar. 21, 2019), *affirmed by* 958 F.3d 1337 (Fed. Cir. 2020).  District courts around the country also follow this reasoning.[5]  As

---

[5] *See, e.g.*, *Think Green Ltd. v. Medela AG*, No. 21-cv-5445, 2022 U.S. Dist. LEXIS 184040, at *13-14 (N.D. Ill. Oct. 7, 2022); *Harel v. K.K. Int'l Trading Corp.*, 994 F. Supp. 2d 276, 284 (E.D.N.Y. 2014); *Wing Shing Prods. (BVI) Co. v.*

explained in detail in Section II.A., *supra*, this is the exact scenario we have here – the District Court properly determined, via a visual comparison, that the Flawless product is not substantially similar to the patented design. As such, Skull Shaver's expert testimony cannot manufacture a genuine issue of material fact and Skull Shaver's argument to the contrary should be rejected.

Lastly, not only is Skull Shaver's argument contrary to this Court's well-established precedent, but it is also logically flawed and, if followed, would allow for the significant waste of judicial and party resources in almost every design patent case. Under Skull Shaver's bright-line rule, all a litigant would have to do to defeat summary judgment and guarantee a trial is hire an expert to manufacture an expert report.

As such, the Court should reject Skull Shaver's aforementioned argument.

## CONCLUSION

The District Court correctly applied the law to the undisputed facts. The judgment should be affirmed in its entirety.

---

*Sunbeam Prods.*, 665 F. Supp. 2d 357, 368 (S.D.N.Y. 2009); *Lawman Armor Corp. v. Master Lock Co.*, No. 02-cv-6605, 2004 U.S. Dist. LEXIS 3705, at 25-26 (E.D. Pa. Mar. 11, 2004), *affirmed without opinion*, 112 Fed. Appx. 55 (Fed. Cir. 2004); *Bush Indus. v. O'Sullivan Indus.*, 772 F. Supp. 1442, 1450 (D. Del. 1991).

Respectfully submitted,

Date: May 15, 2023

/s/ *Michael J. Zinna*

MICHAEL J. ZINNA
VINCENT M. FERRARO
KELLEY DRYE & WARREN LLP
Three World Trade Center
175 Greenwich Street
New York, New York 10007
(212) 808-7800
mzinna@kelleydrye.com
vferraro@kelleydrye.com

*Counsel for Defendant-Appellee*

34

**FORM 19. Certificate of Compliance with Type-Volume Limitations**

Form 19
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS</u>

**Case Number:**  2023-1457

**Short Case Caption:**  Skull Shaver, LLC v. Ideavillage Products Corp.

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes  6058  words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 05/15/2023

Signature:  /s/Michael J. Zinna

Name:  Michael J. Zinna

Save for Filing